Number 237312 in the related cases, Telecom Business Solutions versus D.T. Holdings, Terra Towers, et al. Good morning, Your Honor. Quinn Smith on behalf of appellants. Without any request to dispose of a separate independent claim, the arbitration tribunal sliced off a group of issues and called it a second partial final award. It is not a mutual final and definite award for three principal reasons. First, it does not resolve a separate independent claim. Second, it decided with purported finality on issues still to be litigated in different courts and under different laws. And third, it created pre-award judicial review of the tribunal's partiality and direct contravention of this circuit's binding precedent. Each of these is sufficient to merit reversal and requires the vacancy of the second, third, and fourth partial final awards. If there are any questions, I'll take them. If not, I'll move through each of the reasons. As to the first one, there was no claim identified. The statement of claim, similar to a complaint, was not referenced in the second partial final awards. There was no claim identified in the arbitration by the claimants. It was a motion to compel compliance. The lack of a claim is crucial, as this court held in Metzl-Gelshaft, that the basis for taking an interim award and reviewing it is that it is similar to what a court could grant on a motion for summary judgment. There has to be a claim. That is totally absent in this case. The tribunal has the authority to enforce compliance with its own orders, right? So to the extent that it's not inappropriate to entertain a motion for sanctions. No, and we're not. So if they finally resolve the motion for sanctions, why wouldn't that be a, why wouldn't that be a final award? Because it needs to be a separate independent claim.  Well, I mean, this court has held in Metzl-Gelshaft that that's what forms the basis for an interim award, and I think it's consistent. Yeah, I mean, usually in the normal course, when we look at the final partial awards, they resolve individual claims that come up in the arbitration. Yes, sir. But if, in fact, part of the arbitration is a lack of compliance and the arbitral tribunal has to resolve whether there was a lack of compliance and what sanctions are appropriate, why can't that be an issue that it resolves conclusively in a partial final award? Well, I think first it's inconsistent with the text of Sections 9, 10, and 11 of Chapter 1 of the FAA, and I think it's also inconsistent with the national policy in favor of arbitration with just a limited amount of judicial review. So how do you think it should work? Is it never possible for there to be a final award resolving a motion for sanctions or it has to be resolved alongside a claim? What, what is, you know, how does, how does that, how does the arbitral tribunal's final decision on a motion for sanctions get judicial review? It would, it would be with being resolved in a, in a claim. So maybe the final award with all the claims resolved, if it was specific to an actual claim. Well, not all the claims have to be resolved, right? Because you can have a partial final award, right? So if they had resolved the motion for sanctions and at the same time resolved, you know, the third claim or whatever, you're saying we could then, a district court then could, could confirm that award, including the resolution of the motion for sanctions. I, I don't know, Your Honor, because it, it, I think in that case, the claim itself would be the basis for the interim award. The motion, I mean, I can see maybe a road where they're sufficiently connected, but even, even then, I think that it, the, the sanctions component or the motion to compel compliance, it's probably got to be at the end where everything gets resolved. I mean, if you're acknowledging that the arbitral tribunal has the authority to compel compliance with its own awards and orders, and we have a system in which you can have awards confirmed by a district court on an ongoing basis, it doesn't have to be only the very last award. If it comes up in the course of an arbitration that a party is not complying with, say, some interim order, you're saying that can't be reviewed or confirmed until the very end, even though it's part of an ongoing course of conduct? No, no, no, Your Honor. I'm not taking that extreme of a position. I'm just saying it would depend on, on that motion and how it relates to the claim that was decided, right? And if it's sort of independent and floating out there. Why, why is it independent and floating? So if, in fact, there's a final award that says you need to conduct a sale of the company and altering the leadership is undermining the ability of the company to effectuate that award, why isn't the order to comply with the earlier order is very closely related to an award that had been issued? Well, I think that it's still not resolving a separate independent claim. The mere fact that it is related wouldn't, wouldn't be enough. I mean, the problem, Your Honor, is that we could end up getting lots of orders showing up in federal courts whenever the tribunal wants to somehow compel compliance and then we're massively expanding review because the tribunal wants it, right? This isn't a situation. Does the tribunal want it? Yeah. Well, I mean, this is what this tribunal said. I mean, I mean, we've, we've provided a request for, for an order for, an order for sanctions, right? Yes, but in the, in the proposed order, it says that this is not a final partial award. There was no request for a final partial award from anybody. This isn't what you argued in the district court, is it? You, you challenged on a lot of other grounds, but not the finality. Well, finality does appear as an issue generally. Where, where, where does it, where did you raise that argument? Your Honor, I, I, I thank you for bringing that up. I was, I was looking at it just this morning. And it's towards the end. Just a page in the record? Yeah, no, no, Your Honor. I'm, I'm going to get it for you. I got it right here. Let's see here. This would be on page 19. So that's ECF 124. 19 of? Page 19 of the order, the memorandum of opinion from Judge Kaplan dated January 18th, 2023. And so here we have an issue of finality. And, and so, Your Honor, and we've addressed this in the papers, you know, if, if it's a pure question of law, no facts are to be decided, this court has discretion to consider the argument. The sanction is to hold your counterclaims in abeyance until your client complies, right, with the earlier orders. That is more in section, third partial final award, and I, it's also, I guess it's related to the second partial final award, but it's more the third. And I'm going to say. Yeah, and we have issues with that one that are separate, which is that, that compliance is in the hands of police. They're the ones that get to determine it, not, not the tribunal. And so we, we see that that is an obligation. But you also want to vacate the third award, right? Yes, sir. I just think that it follows from the second award.  Yes, it does. So the tribunal says that the actions of your client are undermining the ability of the tribunal to effectuate compliance with its earlier awards and the relief to which the parties are entitled under the shareholder agreement. Yes. And the sanction that it's imposing is also that it's not even going to consider your claims until you comply. Yes. But you're saying there's no way to get a decision on whether that was appropriate for the tribunal to do until the whole very end of the process. No, that's actually. Wouldn't you want a court to decide whether it's appropriate for a tribunal to hold all your counterclaims in abeyance and order you to, you know, hire back somebody that you don't want to hire back before reaching the end point of all of the proceedings? Well, first off, if we wanted, it wouldn't matter because the parties can't agree to create jurisdiction in the federal courts. I mean, to me, that's Hall Street, right? So first off, it wouldn't matter. Yeah, I know. But I guess I'm sort of asking why it would make sense to say that this is only reviewable until the very end if, in fact, it's something about ongoing compliance and it would have a lot of implications for what the arbitral tribunal does at the next steps. Again, I think that those are considerations. Maybe the tribunal wanted that, but that's just not something that gets put into court because we want it, right? There has to be an award. It has to be mutual, definite, and final. And what the parties want, what the tribunal wants is really irrelevant. And again, I think that that's the lesson in Hall Street. The parties stipulated in the district court to expand the review, and the Supreme Court said we don't care, right? I am out of time. So unless there's other questions, I want to be respectful. Well, can I just ask sort of in principle, you know, if a tribunal issues an initial award that resolves some claim, and so there's no dispute that it's subject to judicial review and it gets confirmed. Yes, sir. But then a party is not complying with it. Yes, sir. And so the tribunal issues a sanction to force compliance. Yes, sir. Whether it can force compliance or not will have a lot of implications on how the later steps of the arbitration proceeds, right? Because if they can't enforce compliance with the first award, maybe they'll end up issuing a different form of relief, right? Well, I mean, that is – it certainly could. But again, I mean, to us, these are all issues that are outside of the terms of the statute and the national policy in favor of arbitration. So I agree there's flexibility, but the flexibility doesn't lead to creating jurisdiction in federal courts because people want it and they think it would be better for the arbitration. Okay. Thank you, counsel. Thank you for your questions. Mr. Unger. Good morning. May it please the court, my name is Mike Unger. I represent the petitioners, appellees, Pelicom Business Solution, and Latham Towers, affiliates of Peppertree Capital Management, referred to collectively for ease of reference in this appeal. As Peppertree and petitioner appellee MLQ is represented by my colleague, Mr. Wiener, we've agreed to divide our allotted ten minutes with six minutes for Peppertree and four minutes for MLQ. I'll address the tribunal's second partial final award, and my colleague, Mr. Wiener, will address the tribunal's third and fourth partial final awards. I want to go right to the questions that were asked. My adversary, Judge Park, has it absolutely right. This entire argument that the award was not final was never raised below.  Mr. Quinn cited Judge Kaplan's order. I'm not sure where he's going with this. Cited Judge Kaplan's order confirming the first partial final award. It was not in the second partial final award order, nor in any of the briefing in the court below. And I want to go to Judge Menasche's question about what was behind this. The best answer, I think, to Judge Menasche's question is eloquently set forth in the tribunal's beautifully written 50-some page second partial final award. It's found early in that ruling at number paragraph six, and it reads as follows. Finally, and I can't say it any better myself, so I'm just going to quote it. Finally, there is little question that the instant motion for sanctions presents a, quote, separate and independent, close quote, claim. In essence, the respondents claim that senior management of the company are unqualified for their roles by reason of partisanship for claimants, and improper conduct worthy of criminal prosecution, which may also be viewed as the claimant's claim that this tribunal should impose sanctions because respondents' views of senior management of the company has not justified their noncompliance with the tribunal's orders. And none of the measures we award as sanctions requires any additional action by the tribunal. So that's the best answer to your honor's question. Just like the last time we appeared before. I mean, it's a final claim. You know, it's a separate claim in the sense that, you know, colloquially they made a claim requesting sanctions, but it's not a claim that initiated the arbitration, right? I think that's fair. Does that matter? We were the movement. I think it's a – I'm sorry. I mean, it seems to be the crux of opposing counsel's argument that it needs to be one of the claims that the arbitral tribunal was composed to resolve. Does that make a difference? No. I think it's a distinction without a difference, and I don't think it makes any difference in the final analysis for the reasons you stated in your question and for the reasons the arbitrators articulated there. And yes, it is – What are those reasons? And the reason is that we were making a claim for sanctions. There was a claim here. The claim was for sanctions, and this is all attendant to a claim that they had interfered with company management in an effort to subvert the mandatory sale of the company. So that was the claim that was being advanced at the time. Just like the last time we appeared before this – It was the second award that held the counterclaims in abeyance subject to – So if it's not reviewable until the very end of the arbitration, then you have a kind of paradox because there always will be the counterclaims hanging out there, right? Exactly. That's exactly right. I mean, it's silly. Your Honor, with all due respect, it's rendered further silly by the fact that we're sitting here today, and they've never complied. It never happened. It's not as though they actually did it. It never happened. You've not heard my worthy adversary assert anything to the contrary, like they ever actually complied with any of it. So here we are. We're now post-fifth partial final award in this case, including a very substantial award of damages, and they've never complied. They've never done a darn thing to comply. They've never lifted a finger to comply. Why does that make a difference to the finality question? You know, that's a fair point, Your Honor. It may not make a difference in terms of the finality question, but it sure makes a difference in terms of the causation issue. I mean, like how in the world does it matter at the end of the day that they would get up here and they would suggest that, you know, this should be now somehow reversed on an issue that wasn't even presented to the district court for review? Judge Kaplan never even had a shot at this, and now they're asking you to reverse it on that basis, and knowing full well that at no point in time did they ever comply. I submit respectfully, quoting a member of this bench from the last time, I had the privilege of appearing before you. I think it smacks of sour grapes. That's what's really going on. Do you want to say anything about the merits here? Oh, yeah. I'll be happy to talk about the merits. What, the three orders that are at issue here? Staying the counter claims and pointing outside counsel, I think, was another one, and ordering that Terrell pay the costs and fees? Those are the merits, right? I'm happy to address any of them, Judge Walker, and I'll address all of them. I submit there are at least four separate independent grounds for affirmance of the second partial final award. First, it's a final award. We've talked about that. The decision to impose sanctions in the second partial final award, no matter what they look like, and to do so in the form of this order wholly within the arbitration tribunal's discretion under well-settled arbitral rules. The arbitration tribunal, just like this court, just like any court, has the inherent authority under the rules, just as you'd expect, to enforce its own orders via whatever means it deems to be reasonable and prudent under the circumstance. The attack on evident partiality grounds fails because the AAA ICDR issued conclusive binding decisions rejecting those claims. Each and every time that they were made, and in any case, appellants, if you choose to not deem that to be binding, they contractually read to rules that said that the AAA ICDR shall make the determination as to whether or not an arbitrator shall be disqualified. But even if somehow that doesn't suffice to this court and you choose to look at it, they don't even come close to meeting the high standard for vacater based on evident partiality in this circuit. They need to show evidence of direct bias and adverse rulings, which there are plenty of here. Say it again. Independent of any adverse rulings. Correct. Independent of any adverse rulings. And again, fourth and finally, and I can't underscore this enough. I'm a little surprised I'm standing here arguing this. Many of the arguments that you've seen articulated by my worthy adversary were not made by his predecessor in the court below. And it's unfair for them to come in here and make brand new arguments to you, arguing that Judge Kaplan got it wrong. Judge Kaplan got it right. Is the final question, is that a jurisdictional question? Say again. The final question, is that a jurisdictional question? I would say yes. Not being a student of the Constitution that way, but I would say yeah. I mean, if the determination is made that there was not a partial final award. Of course, again, we've got three brilliant arbitrators here. I mean, really, look at the award. I mean, it speaks for itself. And they looked at this issue very, very carefully before determining that it was a partial final award. They were very deliberate in doing that, Your Honor. But I would say, I would have to concede, I suppose, yes. If it wasn't final and thus not reviewable by Judge Kaplan and not reviewable by you, perhaps there's a jurisdictional issue. But I don't believe there is. Thank you, Counsel. Thank you, Mr. Wiener. Good morning, Greg Wiener. May it please the Court. I'll address the third and fourth partial final awards. Both grounds- They stem from the second. Excuse me? They relate to the second award. agreement, the award was justified in part as in protecting the first and second partial final awards. But it included protecting the first award. And it also was a standalone claim for breach of the shareholder agreement. The shareholder agreement requires any litigation, arbitration by the subsidiaries to be approved by the board of the company. That never happened. So the arbitrators deemed that a violation of the shareholder's agreement as well as interfering with the ongoing arbitration. Right, so there's one rationale for the third award, which is it's circumvention of the second award because you're bringing your counterclaims as an independent arbitration. But then also, if you think it's a collateral attack on the arbitration itself and circumvention of the agreement to arbitrate all claims, then that's a rationale that doesn't depend on the second award. Exactly, exactly. So in terms of the two asserted grounds on appeal now, these were not asserted below. But evident partiality, they challenged the requirement that the escrow that was set up because there was an escrow agreement, an escrow requirement that for the foreign arbitrations that had been improperly brought, if they were not withdrawn within 15 days, they would have to post an escrow for half the asserted damages. And then if they brought new arbitrations, that same amount of escrow would be placed. So they're complaining that somehow because the award said the escrow had to be on terms acceptable, the claimants that somehow that demonstrates evident partiality. It doesn't come anywhere close to demonstrating evident partiality. It's, I think, a quite straightforward and sensible requirement given the misconduct. Is it a problem for a finality that the way the escrow obligation would work depends on what happens in the foreign arbitrations? So like the amount that they have to put into escrow might change, right? Right. Well, it doesn't change the finality. What the finality is, there was an injunction issued, a mandatory injunction. And like any award, for example, interest, interest changes over time. So to the extent there's an ongoing amount, it wouldn't make it less final. And I think the critical thing here is that the amount to be placed in escrow was formulaic. There was nothing complex about it or that required any sort of ongoing activities. If they affirmatively asserted new arbitrations improperly in violation of the shareholders' agreement, the third partial final award said they had to post into escrow half of the amount of asserted damages in those claims. So that's straightforward. If they ask for $20 million, you've got to post $10 million. And the reason why is because they also have an indemnification obligation that they would have to pay whatever damages are awarded. Exactly. The escrow was set up to provide security for the other element of the third partial final award, which is that the respondents were responsible for and liable for the damages, costs, and expenses incurred by the claimants associated with these improper foreign arbitrations. There is – they do make this argument about how they have to pay the expenses of the claimants automatically upon receiving an invoice, right? Right. And they say, well, that just lets them decide what we have to pay. But then we also have this fourth award, which adjudicates the claim that they demanded unreasonable fees, right? So is your understanding of the third award that they have to automatically pay whatever is in an invoice or would they be able to say, I think that this is unreasonable in terms of expenses? Well, I think, as with any award, they could challenge the award and seek to vacate it. If we submitted unreasonable fees, that would be, I think, subject to the petition to vacate, and the district judge would determine that. The fourth award did not provide fees associated with the foreign arbitrations. It granted the fees.  Exactly. So if, in fact, they had a similar concern about the fees demanded for expenses incurred in the foreign arbitrations, would you get to another award or they would have to automatically pay what was in the invoice? Well, I think the award requires them to pay what we submit in the invoice, and that is self-executing. If they refuse to pay it on the basis that it was an unreasonable amount or wasn't validly incurred, that, to me, would be subject to their petition to vacate the award, and as part of the vacate or a motion for failure to comply with the award. They would have a defense that you weren't complying because you were demanding expenses that aren't genuine expenses. Exactly, and this is actually happening right now. They've asserted additional foreign arbitrations improperly, and we have a pending motion in front of Judge Kaplan, which is going to be heard on Wednesday, for an additional anti-suit injunction and for sanctions for violating that award. Thank you, counsel. Thank you. We'll hear from him.  Briefly, we heard that there is a distinction without a difference as it relates to claims and motions that compel compliance. That's directly contradictory to metal gel shaft, and there's no explanation as to why this court should abandon that precedent from the 80s. Judge Menasche, you talked about staying confident as a paradox. That paradox is the tribunal's fault. If it wants to create paradoxes, we have to deal with them and wait until the end, in the same way that a review of pre-award partiality. We can disagree, but we have to wait until the end for it to be reviewed. So I don't know if it necessarily gets you into court. Yes, sir. Looking at crystal ball, how do you see this ending? If the scenario is that we have to wait until the end. Then at the end, there's going to be a petition to confirm, a petition to vacate, and then we'll look at what the arbitral tribunal did, and then if we think the counter-claims shouldn't have been stayed. Where on the horizon or over the horizon do you see this happening? I wish I knew. The tribunal issued a fifth partial final award, but it didn't stop operating. So I don't know when it ends. I don't know the appellees know when it ends, but it's just sort of open-ended, which is its own issue that we're not going to address. Well, you're not going to address it, but it seems to be an issue that you have some control over. I don't know. Well, the way you've proceeded, I mean, it has been kind of rapidly going to a conclusion. Every step you've made has been to delay this award. Yeah, on that issue, sir, first off, we is not me. I'm counsel to arbitration, recently counseled, so it's a separate issue. But delay. What is more delay, the second partial final award or just issuing an order and getting on with it? I mean, I think that, frankly, the tribunal needs to bear some responsibility for the time that has elapsed because it could have proceeded to just get to the end, but it's not getting to the end. And where we are now isn't a request. We requested that there be an end with the fifth partial final award, and we didn't get it. So I don't know if the delay falls solely on our shoulders. Maybe it's a shared thing, but we wanted to end the arbitration, and we want this award to be vacated. I am past my time. So unless there's a question, I'm going to sit down. Thank you, counsel. Okay, thank you. Thank you all. We'll take the case under advisement. Thank you.